[Crim. No. 618. First Appellate District.—April 13, 1916.]

THE PEOPLE, Respondent, v. FRANK TERRAMORSE, JR., Appellant.

CRIMINAL LAW—LARCENY—INADVERTENT REMARK OF COURT—ADMONITION TO DISREGARD—MISCONDUCT NOT PREJUDICIAL.—In a prosecution for larceny, where the evidence offered in support of the charge tended to show that the defendant had entered into certain meretricious relations with the wife of the complaining witness during the absence of the latter from home, and that it was during the existence of such relationship that the crime was committed with the connivance and consent of the wife, no prejudice is suffered by the defendant from a remark made by the court during argument of counsel as to the admissibility of certain evidence tending to show adulterous relationship, to the effect that the defendant had "tried" to establish such intimacy in another way, where the court, immediately upon its attention being called to its inadvertent remark, instructed the jury to disregard it.

ID.—ADULTEROUS RELATIONSHIP—EVIDENCE—ORDER STRIKING OUT TESTIMONY—INSTRUCTION TO DISREGARD—LACK OF PREJUDICE.—Error

in the admission of testimony which the prosecution claimed tended in some degree to show the existence of adulterous relations between the defendant and the wife of the complaining witness is cured, where such testimony is subsequently stricken out and the jury instructed to disregard it.

Id.—Prejudicial Misconduct of District Attorney—Improper Questions.—It is prejudicial misconduct for the prosecuting officer to ask a character witness for the defendant if the defendant had not been dishonorably expelled from a fraternal organization of which the witness was a member, after objections to five previous questions, all relating to the same matter, had been sustained on the ground that such matter related to a time subsequent to the commission of the crime in question.

Id.—Argument to Jury—Prejudicial Misconduct.—It is also prejudicial misconduct for the prosecuting officer to comment upon the fact that the defendant had refused to permit his wife to be a witness in the case, where the record shows that the attitude of his wife was antagonistic to the defendant.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order denying a new trial. J. J. Trabucco, Judge presiding.

The facts are stated in the opinion of the court.

A. S. Newburgh, and George J. McDonough, for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

RICHARDS, J.—This is an appeal from a judgment of conviction of the defendant of petit larceny, and from an order denying a new trial.

The defendant was charged with the crime of grand larceny, consisting in the alleged larceny of a diamond scarf-pin, cuff-links, a silver portrait frame, a suitcase, a revolver and certain articles of wearing apparel, the property of one J. B. Molera. The evidence offered in support of the charge tended to show that the defendant had entered into certain meretricious relations with the wife of said Molera during the absence of the latter from his home on a trip to Alaska, which culminated in the defendant and Molera's wife going off to New York together, and that it was while these relations existed and this trip was taken by the pair that the above-

mentioned articles, the separate property of the husband, were appropriated by the defendant with the connivance and consent of the wife.

The nature of the case as thus outlined required the presentation of proof as to the adulterous relations between the defendant and the wife of Molera, involving not only a large volume of evidence in support of the theory of the case held by the prosecution, but also involving almost constant clashes between opposing counsel as to the relevancy and admissibility of particular portions of such evidence, with the result that upon this appeal the main issues presented arise out of the alleged misconduct of the court and of the prosecuting officer occurring during the trial and argument of the cause.

The alleged misconduct of the court upon which the appellant relies occurred during the course of a dispute between counsel as to the admissibility of certain evidence, which it was claimed by the prosecution tended to show adulterous relations between the defendant and the wife of Molera. The court was inclined not to admit the particular piece of evidence sought to be elicited, and did not in fact permit its introduction, but in the course of the discussion the following occurred:

"Mr. Smith: I want to show that he made a gift of it, but we will prove that he stole the property and she got possession of it, and we will show how she got possession of it.

"The Court: That would not tend to prove any of the issues in this case. He is not charged with having stolen any of these particular pieces of jewelry.

"Mr. Smith: We have a right to show intimacy; we have a right to show adulterous relations existing between this defendant and Mrs. Molera.

"The Court: You have established that in some other way.

"Mr. Newburgh: You mean he tried to establish it in some other way.

"The Court: Yes; but not in this particular manner. I don't think that would be proper testimony.

"Mr. Newburgh: That is right.

"Mr. Smith: I will show you what purports to be a promissory note dated December—

"Mr. McDonough (Interrupting): Just one second. In order to keep the record straight, and with all due respect, we assign the remark of your Honor to a reply made by Mr.

Smith—a reply made by your Honor, as being prejudicial
to the rights of the defendant, and specify it—

"The Court (Interrupting) : I will instruct the jury that
any statements addressed by the court to counsel—

"Mr. McDonough: We concede, if your Honor please, that
you inadvertently made that statement.

"Mr. Newburgh: Inadvertently, yes.

"Mr. Smith: The court corrected himself immediately
afterward.

"The Court (to the Jury) : Any remarks I address to
counsel should not be considered by you in your deliberations.
If I made a statement which has gone beyond the evidence
or a rational discussion of the evidence, it is your duty to
disregard it. My remarks were addressed to counsel and not
to the jury."

It is quite evident, and in fact it is conceded, that the re-
mark of the court, while an improper reference to the state
and effect of the evidence, was inadvertent, and was ad-
dressed to counsel in the course of a legal argument, and that
the court immediately, upon its attention being called to its
unguarded remark, instructed the jury expressly and em-
phatically to disregard it. This prompt and decided action
on the part of the court was sufficient, in our opinion and
under the circumstances of the particular case, to correct its
inadvertent act and to remove from the minds of the jury
any effect prejudicial to the defendant which might have
been caused thereby.

The appellant also assigns certain rulings of the court dur-
ing the course of the trial as error, and calls particular atten-
tion to two specific instances of such alleged error. The first
of these occurred during the examination of a witness named
Anna Pufahl, with relation to certain interviews between her-
self and the defendant, which the prosecution claimed tended
in some degree to show the existence of adulterous relations
between the defendant and Molera's wife. The court at first
admitted the evidence, but finally became satisfied that it was
too remote, and granted the defendant's motion to strike
out the entire testimony of this witness. This motion was
concurred in by the prosecution, and the court in striking
out the evidence expressly instructed the jury to disregard
and dismiss from their minds the objectionable testimony.
It is to be assumed, in the absence of some showing to the

contrary, that the jury regarded this instruction, and that the error of the court, if any, in its admission was thereby cured.

It is also contended by the appellant that the court erred in regard to the admission of evidence as to certain contents of the defendant's trunk after his return from New York. The defendant had been called in his own behalf and had given evidence as to the presence of certain articles of clothing in his trunk. On cross-examination by the prosecution he was asked as to whether certain other articles were not also in the trunk. We think the prosecution was entitled to pursue the examination of the defendant as to the entire contents of his trunk, a portion of which had been identified by him; and the mere fact that the articles concerning which the inquiry was made were such as reflected no credit upon him, would not of itself justify a restriction of the examination.

The chief contention of the defendant upon this appeal relates to a number of instances of alleged misconduct on the part of the prosecuting officer during the trial and argument of the case. The first of these occurred during the cross-examination of one Bozie, a character witness for the defendant, to whom six questions were asked, all relating to the trial and expulsion of the defendant from a lodge of which the witness was a member. To the first five of these questions the defendant's objection was sustained upon the ground that it had reference to events occurring after the defendant had been charged with this crime; no assignment of misconduct was made to the asking of these five questions, but when the prosecuting officer, knowing, as the record affirmatively shows he did know, that the whole matter being inquired into related to a time after the defendant's reputation had been brought into question by the charge of this crime, asked this question: "This defendant at that trial was dishonorably expelled from the order, wasn't he?" he committed a gross breach of misconduct which counsel for the defendant tempestuously assigned as such, and asked the court for an instruction to that effect to the jury. The prosecuting officer, unchastened by the assignment, proceeded to excoriate defendant's counsel for losing their temper, and asked the court to instruct the jury to disregard the latter's remarks in making the assignment. The court thereupon instructed the jury

to disregard the remarks of both counsel, having evident reference to the interchange of discourtesies which had just transpired, but which neither amounted to a rebuke of the prosecuting officer for persisting in an improper inquiry, nor to an admonition not to pursue such inquiry further; for almost immediately the cross-examiner returned to the subject by asking the same witness whether the defendant now belonged to the order from which his previously unanswered question conveyed the suggestion to the jury that he had been ignominiously expelled. This question was also assigned as misconduct, and a repetition of the former offense, which the admonition of the court to the jury to disregard the personal views or opinions of counsel would neither reach nor cure. The purpose of the prosecuting officer in persisting in this inquiry was all too plainly to get before the jury the fact, or at least the suggestion, that the defendant had been expelled from a fraternal order upon charges involving moral turpitude, and thus to further discredit him before the jury.

It would be a dangerous precedent to permit such a purpose to go unreproved. (*People* v. *Wells,* 100 Cal. 459, [34 Pac. 1078]; *People* v. *Pang Sui Lin,* 15 Cal. App. 262, [114 Pac. 582], and cases cited.)

Several other instances of alleged misconduct on the part of the prosecuting officer in the course of the examination of witnesses are called to the court's attention, but no assignment of misconduct was made.

Upon the argument of the cause the prosecuting officer undertook to comment to the jury upon the fact that the defendant had refused to permit his wife to be a witness in the case. The record shows that the defendant's wife was called to the witness-stand by the prosecution, and stated that she was willing to testify, but that when the defendant was asked to consent that she might become a witness he stood mute. During the argument of the case defendant's counsel had made some reference to the defendant's wife, whereupon, in his reply, the prosecuting officer spoke as follows:

"Mr. Smith: Gentlemen of the jury, Mr. McDonough in his argument spoke of the defendant's wife in this case; he spoke about her and the clothes she had been wearing; he commented about the different hats that she had, but, gentlemen of the jury, she was on the witness-stand. Why didn't they ask her where she got the hats and where she got

the coats? No. He stood upon his constitutional rights. We were willing to put her on the stand, and she was willing to testify, but without the consent of the defendant, of course, we could not examine her, so she left the stand."

The record discloses that the attitude of the defendant's wife toward him was antagonistic. In declining to consent that she should be a witness against him the defendant was standing as strictly upon his legal rights as he would have been had he declined to be a witness himself, and he was equally entitled to the application of the rule that his declination to permit his wife to be a witness should not in any manner prejudice him or be used against him on the trial. (*People* v. *Heacock,* 10 Cal. App. 456, [102 Pac. 543].) In making the foregoing comment the prosecuting officer was guilty of prejudicial misconduct which counsel for the defendant immediately called to the attention of the court, and requested that the jury be instructed to disregard it. The court did not give such an instruction as the defendant asked and was entitled to have given.

Had the trial of this cause proceeded with that degree of decorum and courtesy which should regulate the conduct and attitude of respective counsel in the trial of causes in courts of justice, the two instances of misconduct on the part of the prosecuting officer to which we have referred might not have been sufficient in themselves to warrant a reversal and justify the retrial of this cause, particularly in view of the fact that the defendant was only found guilty of petty larceny; but a reading of the entire—and much too voluminous—record discloses a degree of persistence on the part of the prosecuting officer in the repetition of questions clearly objectionable, and evidently intended to discredit and degrade the defendant and his witnesses in the eyes of the jury, which should not have the approval which would attend the affirmance of a verdict in some measure doubtless influenced by them. Nor should the fact that counsel for the defendant was also seriously at fault in repeated and exasperating objections to the admission of evidence which was clearly competent as supporting the prosecution's theory of the case, much as such conduct is to be deprecated, suffice to furnish an excuse for the misconduct of the prosecuting officer. The only method which this court knows for preventing the spread of such

abuses is that of compelling the retrial of causes in which they occur.

Judgment and order reversed.

Lennon, P. J., and Kerrigan, J., concurred.