(January 3, 1925.)

## STATE, Respondent, v. DANIEL C. BREYER, Appellant.

[232 Pac. 560.]

CRIMINAL LAW—HOMICIDE—CHANGE OF VENUE—IMPROPER ARGUMENT
—PROPER METHOD OF OBJECTION—CLOTHING WORN BY DECEASED—
ADMISSIBILITY OF — RES GESTAE — TIME — DECLARATIONS OF BY-
STANDER — DECLARATIONS OF ONE INCOMPETENT AS WITNESS —
DECLARATIONS OF HUSBAND OR WIFE—INDORSING NAME OF WIT-
NESS ON INFORMATION DURING TRIAL—RAISING OBJECTION TO EVI-
DENCE BY MOTION TO STRIKE—ADMITTING IMMATERIAL EVIDENCE TO
MEET IMMATERIAL EVIDENCE.

1. To require a change of venue under C. S., sec. 8888, it must appear that the prejudice against the accused is so great that a fair and impartial trial cannot be had in the county in which the information is filed.

2. An objection to argument of counsel must point out specifically the matter complained of as improper.

3. A motion asking the court to discharge the jury and declare a mistrial is not a proper method of raising an objection to improper argument of counsel.

4. Upon the trial of a homicide case, where defendant pleads not guilty, the clothing worn by the deceased is not rendered inadmissible by the mere fact that defendant's counsel states that the killing and location of the wounds are admitted.

5. In determining whether declarations are part of the *res gestae*, there is no exact standard of time. It is sufficient if they were made at a time so near the occurrence as to preclude the idea of deliberate design.

6. Declarations of one not a principal or party are admissible if so connected with the occurrence being investigated as to be part of the *res gestae*.

7. Statements which are part of the *res gestae* are not rendered inadmissible by the fact that the person making them would not have been competent to testify as a witness.

8. The statutory provision that husband and wife are not competent witnesses for or against each other in a criminal action

Publisher's Note.

8. Admissibility of declarations made by one spouse in presence of other, see note in 19 Ann. Cas. 528.

with certain exceptions does not render inadmissible their statements which are part of the *res gestae.*

9. *Held,* that the court did not err in permitting the name of a witness for the state to be indorsed on the information after the trial began, in view of the showing made.

10. The question of inadmissibility of evidence cannot be raised by motion to strike the answer when there is no objection to the question, when the question clearly presents the point sought to be raised, and there is no element of surprise in the answer.

11. It is not reversible error to permit one side to introduce immaterial evidence to meet immaterial evidence offered by the other.

APPEAL from the District Court of the Sixth Judicial District, for Custer County. Hon. Ralph W. Adair, Judge.

Appeal from judgment of conviction of murder of the first degree. *Affirmed.*

Whitcomb, Cowen & Clark and Chase A. Clark, for Appellant.

The court abused its discretion in denying the motion for change of venue. (*People v. Suesser,* 132 Cal. 631, 64 Pac. 1095; *People v. Pfanschmidt,* 262 Ill. 411, Ann. Cas. 1915A, 1171, 104 N. E. 804; *Shipp v. Commonwealth,* 124 Ky. 643, 99 S. W. 945, 10 L. R. A., N. S., 335.)

The court stated in overruling defendant's motion that he did so after making an independent investigation, and there is no authority in law or reason which permits any judge to decide a question properly presented to him, through making an independent investigation of which the defeated party knows nothing and which he has no opportunity to meet. (15 R. C. L. 1056; *United States v. Wilson,* 7 Pet. 150 (U. S.), 8 L. ed. 640; *Arkansas v. Kansas & T. Coal Co.,* 183 U. S. 185, 22 Sup. Ct. 47, 46 L. ed. 144; *Green & Sons v. Lineville Drug Co.,* 150 Ala. 112, 124 Am. St. 17, 43 So. 216; *Brown v. Piper,* 91 U. S. 37, 23 L. ed. 200; *Utah Nursery Co. v. Marsh,* 46 Colo. 211, 103 Pac. 302; *Purdy v. Erie R. Co.,* 162 N. Y. 42, 56 N. E. 508, 48 L. R. A. 669; *Mann v. Mercer County Court,* 58 W. Va.

651, 52 S. E. 776; *Monte Vista Canal Co. v. Centennial Irr. Ditch Co.,* 24 Colo. App. 496, 135 Pac. 981; *Panama Electric Ry. Co. v. Moyers,* 249 Fed. 19; *International Harvester Co. v. Industrial Commission,* 157 Wis. 167, Ann. Cas. 1916B, 330, 147 N. W. 53.)

The state was permitted to introduce the bloody clothes of the deceased, over objections by the defendant and after his admission of the killing and the course and location of the bullets, and it was not introduced for any other purpose than to prejudice the minds of the jury against the defendant. (13 R. C. L. 928; *Rollings v. State,* 160 Ala. 82, 49 So. 329; *McKay v. State,* 90 Neb. 63, 132 N. W. 741, 39 L. R. A., N. S., 714; *Flege v. State,* 93 Neb. 610, 142 N. W. 276, 47 L. R. A., N. S., 1106.)

The state was permitted, over the objection of the defendant, to prove statements made by defendant's wife out of his presence and hearing. These statements were clearly hearsay, were very damaging and were used as an indirect mode of avoiding the operation of C. S., sec. 9130, prohibiting the wife from testifying against her husband. (*State v. Hatcher,* 29 Or. 309, 44 Pac. 584.)

The evidence relating to threats or to the participation of witness Millick in any of the events was not admissible until after it was at least substantially proven that the crime had been committed. (*State v. Hyde,* 234 Mo. 200, Ann. Cas. 1912D, 191, 136 S. W. 316.)

A. H. Conner, Attorney General, and James L. Boone, Assistant Attorney General, for Respondent.

The admission of the bloody clothes of the deceased was not prejudicial error. (*State v. Dong Sing,* 35 Ida. 616, 208 Pac. 860; *People v. Hayden,* 18 Cal. App. 543, 123 Pac. 1102, 1114; *State v. Moore,* 80 Kan. 232, 102 Pac. 475; *State v. Stansberry,* 182 Iowa, 908, 166 N. W. 359.)

In seeking to review the alleged prejudicial statement of the prosecuting attorney the defendant should make his objection publicly in court, pointing out specifically the matter complained of as improper in the argument, and should take

exception promptly to the failure of the trial judge to condemn it.    (16 C. J., sec. 2268, p. 914, notes 29, 30 and 31.)

A general objection to an argument without calling the attention of the court to any particular feature‵complained of is insufficient and cannot be made specific for the first time on appeal.    (*People v. Frigerio,* 107 Cal. 40, 151 Pac. 107.)

A witness' name may be indorsed on the information after the trial is begun.    (*State v. Allen,* 20 Ida. 263, 117 Pac. 849; C. S., sec. 8810.)

Appellant in error is estopped to complain of error in the admission of evidence where the evidence was not rebuttal or explanatory of his evidence, and where the error, if any is committed, is invited by the action of appellant.    (17 C. J., sec. 3557, note 6, p. 211; *Selman v. State,* 159 Ark. 131, 251 S. W. 882; *State v. Steidel,* 98 Or. 681, 194 Pac. 854; *Davis v. State,* 25 Ga. App. 532, 103 S. E. 819; *People v. H. Jevne Co.,* 179 Cal. 621, 178 Pac. 517.)

It was not error to overrule a motion for change of venue. (*State v. Reed,* 3 Ida. 754, 35 Pac. 706; *State v. Gilbert,* 8 Ida. 346, 1 Ann. Cas. 280, 69 Pac. 62; *State v. Rooke,* 10 Ida. 388, 79 Pac. 82; *State v. Hoagland,* 39 Ida. 405, 228 Pac. 314.)

Before a specific declaration of a third party admitted as a part of the *res gestae* is to be declared by this court to be prejudicial, an effective showing must be made proving that the utterance has been made after the time within which the nervous excitement has subsided and the reflective powers have come into dominance.    (3 Wigmore on Evidence, pp. 744–751.)

Such spontaneous declarations made in the absence of the defendant are not prejudicial.    (*People v. Jones,* 160 Cal. 358, 117 Pac. 176.)

McCARTHY, C. J.—This appeal is from a judgment of conviction of murder of the first degree. Appellant Breyer shot one Oscar Taylor in the face, inflicting a mortal wound, shot him a second time in the chest, and then, as he lay upon

the ground, shot him a third time in the back. In defense of his act appellant relied upon self-defense and insanity. He also introduced testimony to the effect that he believed deceased had improper designs on his wife and introduced evidence which he said caused him to entertain this belief. This included his own testimony that, just before the killing, he had seen deceased embracing Mrs. Breyer in the Breyer home. This alleged belief of appellant, and the circumstances on which it was based, could not have furnished a justification of, and thus an absolute defense for, the killing, but would undoubtedly have had great weight with the jury in determining the degree of the homicide, if the jury had considered the evidence credible. The verdict of the jury shows that it repudiated the idea of self-defense or insanity and also the idea that there was any provocation which would reduce the degree of the homicide. All the evidence shows the act to have been deliberate and premeditated in the extreme. The jury evidently regarded the case as one of those in which an individual assumes the role of executioner and inflicts capital punishment upon another. It is not even claimed that the evidence is insufficient to sustain the verdict. The only errors assigned are errors of law, of which we will discuss such as appear to require it.

Appellant contends that the court erred in denying his motion for a change of venue and in basing its ruling in part upon an independent investigation made by the presiding judge. In ruling upon the motion the court said:

"The Court: An exception will be allowed. I have carefully examined the affidavits made on behalf of the defendant, and the counter-affidavits, and have listened to the argument of counsel, and have made independent investigation of the situation which exists with reference to the question under discussion, and feel convinced that the defendant can receive a fair trial in this county, and that no such prejudice exists against him as would warrant the granting of a change of venue, and for these reasons the application is denied."

It may be, as suggested by respondent, that the judge made an independent investigation of the legal question, and the authorities. This would have been proper. From the language used, however, it seems more likely that the judge made an independent investigation of the facts, as contended by appellant. This was clearly improper. However, we should not reverse the judgment simply because the judge acted improperly in this regard if, in spite of that fact, the showing made in support of the motion for a change of venue was not sufficient. This court has recently held:

"To require a change of venue under C. S., sec. 8888, providing for a change of venue on the ground that a fair and impartial trial cannot be had in the county where the information is filed, it must appear that the prejudice against the accused is so great as to prevent a fair and impartial trial, and it is not sufficient to show merely that great prejudice exists against him." (*State v. Hoagland*, 39 Ida. 405, 228 Pac. 314.)

From a consideration of the affidavits in support of the motion and the counter-affidavits filed by the state, we are not satisfied that the showing called for a change of venue, or that it was an abuse of discretion to deny the motion.

Appellant contends that the court erred in overruling his objections to certain statements made by the prosecuting attorney in his opening statement to the jury and also in his argument. He complains because the prosecuting attorney said in his opening statement the state would show that the deceased Oscar Taylor had accused appellant and one Millick of stealing sheep and had made arrangements to have appellant arrested; that appellant knew these facts, and that the motive for the killing was appellant's fear that the deceased would cause his arrest. He also complains because the prosecuting attorney said in his opening statement that the appellant had not been providing his wife with wood or made any arrangement for carrying water for her or anything of that kind. No specific objection was made at the time the particular statements objected to were uttered. At the close of the opening statement, the following occurred:

"Mr. Clark:. We wish to make an objection to the statement made by counsel as not being in harmony with the evidence in this case. There is no evidence to support the statement made by the counsel for the state, and the statement so made will not be supported by the evidence, and it is highly prejudicial to the defendant's rights.

"The Court: The record may show your objection.

"Sen. Whitcomb: Just a moment. And the statement as to motive on the part of the defendant will not be proper evidence in this case, and is highly prejudicial to the defendant's rights.

"The Court: The record may show your objection. Of course, the court cannot intelligently rule upon it in the absence of hearing the evidence. Do you desire to make your statement at this time, Mr. Clark?

"(Thereupon Mr. Clark stated the case on behalf of the defendant in part.)"

An objection to an argument should point out specifically the matter complained of as improper. (16 C. J., sec. 2268, p. 914; *People v. Frigerio,* 107 Cal. 151, 40 Pac. 107.) The first part of the objection was too general to be effective. The part of the objection relating to the statement of motive should have been made at the time the statement was made. The objection did not call attention to that part of the statement relating to appellant's neglect to provide his wife with wood, etc. As to the matter of motive, even if the objection had been properly made, the court would not have abused its discretion in denying the objection. The statement was in substance that the deceased had taken steps to have appellant arrested for stealing sheep, and that this was known to appellant. This was proper evidence or motive to be submitted to the jury. We conclude that the court did not err in ruling upon appellant's objection to the opening statement.

Appellant also contends that the court erred in denying his motion for a mistrial on the ground of misstatements made by the prosecuting attorney in his opening argument. At the close of this argument appellant's counsel said:

"Mr. Clark: At this time, if the court please, we wish to move the court to declare a mistrial of this action, on the grounds, that the remarks made by the attorney for the State, Mr. Adamson, was highly prejudicial to the defendant; that he did not confine himself to the evidence introduced at this trial; that he spoke particularly, in such argument, in regard to the stealing of sheep from Jim Calvin, which was ruled out as inadmissible by the court; that evidence was introduced that Daniel Breyer wanted to see if everything in regard to the sheep-stealing was satisfactory; that he also stated in his argument to the jury that Mrs. Breyer was sent after Mr. Taylor to bring him back to the house; that he also stated that Mrs. Breyer went after Mr. Taylor, and brought him back to the house, which is not in evidence; that he also stated that the defendant was trying to blacken the name of his wife, and, particularly, do we move for a mistrial upon the reference that counsel made when he said that this defendant kept his wife off of the witness-stand, so that he could go scot-free, and all other remarks made by him, which were not admitted, or not evidence."

The motion was denied. No objection was made at the time the particular statements complained of were uttered. No motion was made to strike out the statements objected to nor for an instruction telling the jury to disregard them. The only matter referred to that could reasonably be held to be improper or prejudicial was the statement in regard to keeping the wife off the witness-stand. Counsel did not directly charge appellant with keeping his wife off the witness-stand but made this general statement:

"Why, gentlemen, if we permit these kind of killings the evidence shows this is, in Custer county, if anybody wants to kill any of you fellows, he can go to see your girl and kill you in the same way, he could plead insanity, and on the ground of insanity he could get in everything what he thought, and he could keep his wife off of the witness-stand if he wanted to in this state, and go scot-free."

It has been held that, where the statute makes the evidence of a wife inadmissible without the husband's consent, per-

mitting counsel to comment in argument on the fact that she did not testify is error and ground for reversal. (*People v. Terramorse,* 30 Cal. App. 267, 157 Pac. 1134; *State v. Hatcher,* 29 Or. 309, 44 Pac. 584; *Graves v. United States,* 150 U. S. 118, 14 Sup. Ct. 40, 37 L. ed. 1021.) Even if it should be held that counsel's indirect reference to the matter brings the case within the doctrine of the above authorities, appellant was under the duty of raising the question in the proper way by objecting to the statement when made and by asking the court to properly instruct the jury. (16 C. J., secs. 2268, 2269, pp. 914, 915.) Appellant did none of these things but simply asked the court to declare a mistrial of the action, which was not a necessary or appropriate remedy. The court did not err in denying this motion and the denial of it is the only error alleged or complained of.

Appellant contends that the court erred in overruling his objection to certain exhibits which consisted of bullet torn and blood-stained clothing worn by the deceased at the time appellant shot him. The contention is that this evidence was irrelevant and immaterial because counsel stated that appellant admitted the killing, the location of the wounds, and the course of the bullets as testified by the state's witnesses; therefore the introduction of these exhibits served no useful purpose and had the inevitable effect of prejudicing the jury against appellant, which was the purpose for which they were introduced. Appellant cites some authorities which seem to bear out his contention. His argument is, however, met by the decision of this court in *State v. Dong Sing,* 35 Ida. 616, 208 Pac. 860, in the course of which the court said:

"Appellants assign as error the introduction in evidence of the garments worn by Wong Bock Sing at the time he was killed, such garments being bloody and having in them certain holes which the state claimed to have been made by some of the shots which killed the deceased. The contention of appellants is that there was no necessity for the introduction of these garments in view of the testimony that had been offered by the state as to the killing, and that they

could have no other effect than that of arousing the prejudices and passions of the jury. We are unable to say that there was no necessity for the introduction of these exhibits; in fact, in the prosecution of a case of this kind counsel for the state usually and properly feel that it is necessary to introduce all the evidence available in making out the state's case. The plea of not guilty puts in issue all of the material allegations of the information and the state cannot anticipate what evidence may be offered or what admissions may be made by the defense, and cannot safely rely upon the defense to make any admissions. It has been repeatedly held by the courts that 'Articles of clothing worn at the time of the crime by the person injured or killed are admissible in evidence, provided they illustrate or throw light on some issue, and provided they are properly identified and are shown to be in substantially the same condition as at the time of the offense.' " (See, also, *State v. Stansberry*, 182 Iowa, 908, 166 N. W. 359, and *State v. Moore*, 80 Kan. 232, 102 Pac. 475.)

Appellant contends the court erred in overruling his objections to evidence of certain statements made by his wife shortly following the killing. The sheriff was permitted to testify that she, standing near the body of the deceased, some three or four minutes after the shooting, said "Oh, my God! I can't understand what made Dan do this. I couldn't saw my own wood." She was with deceased at the time he was shot, they having just come out of appellant's house. Appellant testified in his own behalf that he believed deceased had improper designs on his wife and related circumstances which caused this belief, including the fact that a few minutes before the killing he had seen the deceased embracing his wife in the home. Respondent undoubtedly introduced evidence of the wife's statement in order to offset the inference that anything improper had happened. Over appellant's objection, the court permitted the witness Shaw to testify that, twelve or fifteen minutes after the killing, Mrs. Breyer standing near the body said: "Isn't it terrible! Isn't it terrible! And he was innocent." Respondent's pur-

pose in proving this statement was undoubtedly the same as in the case of the statement testified to by the sheriff. The court evidently admitted this evidence on the ground that the statements were part of the *res gestae* .and its introduction is defended on this ground by respondent. Appellant's first objection is that the statements were too remote in point of time to constitute part of the *res gestae.* The rule applying to this aspect of the question is well stated in the opinion of this court in *Erickson v. Rutledge Timber Co.,* 33 Ida. 179, 191 Pac. 212, as follows, quoting favorably from 10 R. C. L. 978:

" 'Time is not necessarily a controlling element or principle in the matter of *res gestae.* The general rule is that a declaration sought to be proved must have been contemporaneous with the event established as the principal act; but in order to constitute declarations a part of the *res gestae,* it is not necessary that they shall have been precisely coincident in point of time with the principal fact. If they sprang out of the principal fact, tend to explain it, were voluntary and spontaneous, and made at a time so near it as to preclude the idea of deliberate design, they may be regarded as contemporaneous, and are admissible in evidence. . . . ' "

See, also, *Wilson v. St. Joe Boom Co.,* 34 Ida. 253, 200 Pac. 884. In deciding this question something must be left to the discretion of the trial court. (3 Wigmore on Evidence, pp. 744–751; *Roach v. Great Northern Ry. Co.,* 133 Minn. 257, 158 N. W. 232.) We are not prepared to hold that overruling the objection would be an abuse of discretion if the question of time were the only one involved. As a usual thing a statement offered as part of the *res gestae* is a statement made by one of the principals or actors. In this case the statement was not that of an actor or principal. However, by the weight of authority and the better reasoning, the declarations of even a bystander are admitted in evidence if they are so connected with the occurrence being investigated as to constitute part of the *res gestae.* (See 3 Wigmore on Evidence, 2d ed., sec. 1755, pp. 756, 757, and many authorities mentioned and analyzed in note 3. See, also, *People v.*

*Jones,* 160 Cal. 358, 117 Pac. 176.) The most formidable reason assigned by appellant for contending that it was error to admit the evidence is that it was in violation of C. S., sec. 9130, which provides as follows:

"Sec. 9130. Neither husband or wife are competent witnesses for or against each other in a criminal action or proceeding to which one or both are parties, except:

"1. With the consent of both, or

"2. In cases of criminal violence upon one by the other; or

"3. In cases of desertion or nonsupport of wife or child by the husband."

The argument is that by admitting evidence of these statements the court virtually made of the wife a witness against her husband.

Many authorities hold that the marital privilege protected by this statute excludes extrajudicial utterances as well as judicial utterances. (*Johnson v. State,* 122 Miss. 16, 84 So. 140; *Nat. German-American Bank v. Lawrence,* 77 Minn. 282, 79 N. W. 1016, 80 N. W. 363; *Tacket v. May,* 3 Dana (Ky.), 79; *State v. Richardson,* 194 Mo. 326, 92 S. W. 649; *State v. Reid,* 178 N. C. 745, 101 S. E. 104; *Bennett v. State,* 80 Tex. Cr. 652, 194 S. W. 145, 148; 3 Wigmore, 2d ed., sec. 1751, p. 753, note 4.) Respondent's answer to this argument is that the statute and the above authorities do not apply to statements which are part of the *res gestae.* It is true that in none of the authorities just above cited, with the possible exception of the Kentucky case, is the statement properly a part of the *res gestae.* By the weight of authority the declarations of persons not competent to testify,—for instance, infants,—may be received as part of the *res gestae.* (22 C. J., sec. 541, p. 451, note 52; *Beal-Doyle Dry Goods Co. v. Carr,* 85 Ark. 479, 14 Ann. Cas. 48, 108 S. W. 153; *Grant v. State,* 124 Ga. 757, 53 S. E. 334; *Kenney v. Phillipy,* 91 Ind. 511; *Dorr v. Atlantic Shore Line Ry.,* 76 N. H. 160, 80 Atl. 336; *Yeatman v. Hart,* 6 Humph. (Tenn.) 375; *Wilson v. State,* 49 Tex. Cr. 50, 90 S. W. 312; *Thomas v. State,* 47 Tex. Cr. 534, 122 Am. St. 712, 84 S. W.

823; *Kenney v. State* (Tex. Cr.), 79 S. W. 817, 65 L. R. A. 316; *Croomes v. State*, 40 Tex. Cr. 672, 51 S. W. 924, 53 S. W. 882; *Grant v. State*, 124 Ga. 757, 53 S. E. 334; *Cook v. State*, 22 Tex. App. 511, 3 S. W. 749.) In *Grant v. State, supra,* the court said:

"We cannot agree with counsel that permitting the witness to testify to the words of a little child too young to be brought into court as a witness was equivalent to permitting the child itself to testify."

In the following decisions the same principle was applied to declarations of a husband or wife constituting part of the *res gestae.*

"Though the husband is incompetent to testify for his wife, his statement when he was purchasing a carriage that he was purchasing for her, constituting part of the *res gestae,* may be proved by a competent witness." (*Strothers v. McFarland* (Mo. App.), 194 S. W. 881.)

"The objection to the testimony of Mrs. Rice was incompetent. It was the statements of the wife in the presence of the respondent in regard to the manner of the children's death, and appears to have been necessary to a full understanding of what was said by respondent; and in such case the rule sought to be applied, that the wife cannot testify against the husband who is the respondent, is not encroached. The wife was not sworn in the case, and the facts queried about were a part of the *res gestae.*" (*People v. Foley,* 64 Mich. 158, 31 N. W. 99.)

"The provisions of the Code, etc., prohibiting a husband or a wife from being examined as a witness for or against the other, except with the consent of both, does not preclude the people, in a criminal proceeding against either of the spouses, from proving the statements or declarations of the other, if otherwise admissible, by the testimony of a witness who heard them. The Code merely makes either spouse incompetent as a witness in an action or proceeding against the other, but does not render their statements elsewhere given privileged against being shown by competent testimony." (*People v. Chadwick,* 4 Cal. App. 63, 87 Pac. 384.

See, also, *People v. Murphy,* 45 Cal. 137; 1 Wharton on Crim. Ev., 10th ed., p. 490.) The above authorities establish the principle that statements which are part of the *res gestae* are not rendered inadmissible by the fact that the person making them would not have been competent to testify as a witness. While conceding the soundness of the rule as applied to the statements of incompetent witnesses such as infants, Prof. Wigmore questions its applicability to the testimony of husband and wife. He says:

"The marital privilege rests on different grounds, and would equally exclude extrajudicial utterances." (3 Wigmore on Evidence, sec. 1751, p. 753, subd. 3, note 4; 4 Id., sec. 2233, pp. 755, 756, note 2.)

At the latter place, the learned author cites as authorities the cases cited *supra* as holding that the marital privilege excludes extrajudicial utterances. As above noted, in only one of these was the statement part of the *res gestae.* It is true that the rule barring testimony of infants and the rule barring that of husband and wife rest upon different grounds, the former upon the ground of incompetency and the second upon the idea that it is contrary to sound public policy to array spouse against spouse. We conclude, however, that the principle of the above authorities is sound and logically applicable here, and that to introduce statements of a husband or wife, which are part of the *res gestae,* is not a violation of the statute. It follows that the court did not err in admitting the statements made by Mrs. Breyer.

Appellant contends that the court erred in overruling his objection to the indorsement of the name of M. A. Brown on the information after the trial began. Under the circumstances shown by the affidavits, the action of the court in this regard was not error. (*State v. Allen,* 20 Ida. 263, 117 Pac. 849.) Moreover, the question is not properly here for our consideration, as no exception was taken to the ruling of the court. (C. S., sec. 9006, subd. 3.)

Appellant contends that the court erred in overruling his motion to strike that part of Brown's testimony which re-

40 Idaho—22

lated to the charge that appellant and Millick had stolen some sheep. The motion to strike came too late, the testimony having been admitted without objection on the part of appellant, and the record showing that appellant was not taken by surprise by the answers to the questions. Moreover, Brown testified that he repeated to appellant and Millick statements made to him by deceased Taylor in that regard. The evidence would therefore be admissible as bearing upon the question of motive.

Finally, appellant contends that the court erred in overruling his objection to evidence given by witness Gardiol in regard to certain statements made by deceased Taylor, and in denying appellant's motion to strike out this evidence. The record shows that the witness testified, in response to questions by appellant's counsel, that appellant's wife met Taylor at his house, and that he arranged the meeting, after the time when appellant claimed he had ordered Taylor to keep away from his wife. This evidence was not strictly admissible. However, the state did not object to it. The substance of the evidence objected to by appellant was that Taylor met appellant's wife for the purpose of arranging for taking up a mortgage which he held on some sheep in which she had an interest. The evidence was not prejudicial. Appellant was estopped to object to it because it was introduced to meet immaterial evidence which he himself had introduced. The error, if any, was invited. (*Selman v. State,* 159 Ark. 131, 251 S. W. 882; *State v. Steidel,* 98 Or. 681, 194 Pac. 854; *Davis v. State,* 25 Ga. App. 532, 103 S. E. 819; *People v. H. Jevne Co.,* 179 Cal. 621, 178 Pac. 517; 17 C. J., sec. 3557, p. 211, note 6.)

Since we find no reversible error in the record, the judgment is affirmed.

Budge, William A. Lee and Wm. E. Lee, JJ., concur.