477 P.2d 255

**The STATE of Arizona, Appellee,**

**v.**

**Jesse A. RACKLEY, Appellant.**

**No. 1798–2.**

Supreme Court of Arizona,
In Banc.
Nov. 20, 1970.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Frank Gabusi, Yuma, for appellant.

McFARLAND, Justice.

Jesse A. Rackley, hereinafter referred to as defendant, was tried and convicted of first degree murder of one Harold Terry and sentenced to life imprisonment in the Arizona State Penitentiary. From his conviction and sentence he appeals.

On the evening of May 8, 1966, Harold Terry registered at the Tropic Motel, Blythe, California. He had come from Valley Farms, Arizona, ostensibly for the purpose of working in the Blythe area. On the morning of May 9, 1966, he related to defendant that he was employed to operate a large produce truck which broke down on the highway near Quartzsite, Arizona. Terry maintained that his employer was for-

warding money to cover the repairs and expenses. While Terry and the defendant drank at a local tavern, friends of defendant searched for the truck. No money arrived and the truck was not found. That evening defendant drove Terry and two of defendant's friends, Everett Parker and LeRoy A. Wright, toward Quartzsite, Arizona, in an effort to locate the truck and settle the dispute that had arisen as to whether such a truck existed. All four were intoxicated and continued drinking. While stopped on the highway in the desert, Parker argued with and struck Terry because of the deception and as Terry walked away from the car Parker followed still arguing. When both were 30 to 50 feet from the automobile defendant fired a shot which ricocheted off the pavement. Defendant admitted firing the first shot. After Terry and Parker walked another 30 feet another shot was heard and Terry collapsed and apparently died instantly. Parker looked back and saw defendant in the process of lowering the gun. Wright saw defendant aim the gun and fire twice. All three loaded the body in defendant's automobile and it was left in a nearby area of the desert. Parker assisted the defendant in burning the personal effects of the victim and removing the blood stains from the trunk floor of the automobile.

Discovery of the body ten days later led to an information against defendant for murder and accessory charges against Parker and Wright. Defendant was found guilty by a jury on October 15, 1966, after a four day trial and in accordance with the verdict sentenced to life imprisonment. He was granted the right to take this delayed appeal. His first and principal contention is he was denied the constitutional right to effective assistance of counsel. He maintains that his counsel was so weak and participation minimal that the overall impression is one of very little effort expended in his defense. Defendant's present counsel then sets forth five pages of alleged failure of trial counsel to properly represent defendant which principally involve his not making objections or engage in lengthy cross-examination of the state's witnesses without indicating how such activity would have accomplished more than to have increased the size of the record. The evidence presented was proper and material. There was little contradiction in the testimony and the question for the jury was who fired the second shot and if they found defendant had fired the shot then what his state of mind was at the time. His intoxication bore upon that question. We cannot agree that trial counsel was unprepared. He was familiar with testimony taken at the preliminary hearing and referred to it often and apparently he avoided asking questions which would further damage the defense.

The right to counsel means the right to effective counsel, Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). This court has stated that it will intervene only when the representation is of such quality as to be farcical or a sham, State v. Kruchten, 101 Ariz. 186, 417 P.2d 510, cert. den. 385 U.S. 1043, 87 S.Ct. 784, 17 L.Ed.2d 687, where we held:

"The principle here controlling is that a conviction will be held invalid only if the representation by counsel was a farce or a sham. Dodd v. United States, 321 F.2d 240 (C.A.9, 1963); Rivera v. United States, 318 F.2d 606 (C.A.9, 1963); O'Malley v. United States, 285 F.2d 733 (C.A.6, 1961); Trammell v. State, 276 Ala. 689, 166 So.2d 417 (1964); People v. Robillard, 55 Cal.2d 88, 10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086, cert. den. 365 U.S. 886, 81 S.Ct. 1043, 6 L.Ed.2d 199; People v. Strader, 23 Ill.2d 13, 177 N.E.2d 126 (1961); Bryant v. Warden, 235 Md. 658, 202 A.2d 721 (1964); King v. Commonwealth, Ky., 387 S.W.2d 582 (1965).

"For example, in O'Malley v. United States, supra, the Sixth Circuit said:

'Appellant's counsel was of his own choosing. Under such circumstances the rule has been often stated that only if it can be said that what was or was not done by the defendant's

attorney for his client made the proceedings a farce and a mockery of justice, shocking to the conscience of the Court, can a charge of inadequate legal representation prevail. [Citation of cases.]' 285 F.2d 733, 734.

"We conclude that there is nothing now before this Court to support the charge that the representation by Brandt was a farce or a sham or shocking to the conscience. The plain truth is that the unvarnished facts afforded no meritorious defense. Brandt's advice to enter pleas of guilty was founded upon the obvious hope that the court would be merciful in not inflicting capital punishment. It was a strategical decision—how to make the best out of what was a nearly hopeless situation. Strategical decisions are not the kind which courts permit convicted felons to indulge in second guessing. United States v. Stoecker, 216 F.2d 51 (C.A.7, 1954); Application of Tomich, 221 F.Supp. 500 (D.C. Mont.1963); Casey v. Overlade, 129 F. Supp. 433 (D.C.Ind., 1955).

'Advocacy is a skill and art; easy to criticize, difficult to fairly appraise. Indeed a post-mortem of criminal trials, selected at random, would undoubtedly reveal flaws of varying magnitude in the trial techniques of respected members of the bar. Our profession is one in which hindsight is a meager measure of counsel's competency. Trial strategy is seldom viewed with a uniform eye.' United States v. Stoecker, supra, 216 F.2d at 52."

Defendant contends that trial counsel made a material error in not objecting to the testimony of the pathologist to be read to the jury without requiring a hearing as to the physical fitness of the doctor to testify. The record discloses that a physician's affidavit was filed and that counsel was aware that the pathologist was hospitalized. Defendant suggests the pathologist be questioned "whether or not the hole in the head of the deceased could be caused by means other than a bullet" and that it was never "established if the doctor had an opinion as to the cause of death". The pathologist had testified at the preliminary hearing and was cross-examined by the associate of defendant's trial counsel. Regarding the issues raised by defendant the doctor testified as follows:

"Essentially I found a wound in the skull. I found a hole in the skull, in the midline posterior to the opening through which the spinal cord, or through where the vertebrae are attached to the skull, which in my opinion was compatible with the entrance effect of a large caliber bullet; and I found a fragment of the skull knocked out or poked out on top of the head in front of the midline."

\* \* \* \* \* \*

"Question: Doctor, let me ask you this: This condition that you found in the skull, would \* \* \* presuming for a moment this was the result of a gunshot wound, I take it it is your opinion that it was?

"Answer: Yes.

"Question: Would such a wound be fatal?

"Answer: Yes."

Defendant further attacks trial counsel for his failure to move for a directed verdict at the close of the state's case. While such motion is frequently made as a matter of routine by trial counsel, failure to so move is not error where the record does not support such a motion nor was it in this case prejudicial to the defendant in view of the evidence presented by the state. A.R.S. 17, Rules of Criminal Procedure provides as follows:

"*Rule 270. Directing acquittal of defendant.*

If at the close of the evidence for the state or at the close of all the evidence the court is of the opinion that the evidence is insufficient to warrant a conviction, it may, and on the motion of the defendant shall, direct the jury to acquit the defendant."

In State v. Holliday, this court held that said rule questions the sufficiency, not the competency of the evidence, 92 Ariz. 168, at page 171, 375 P.2d 370, at page 372, where this court said:

"There is no merit in the assignments of error based on the trial court's refusal to direct a verdict of acquittal. A motion for a directed verdict questions the sufficiency, not the competency of the evidence. Douglas v. State, 26 Ariz. 327, 225 P. 335 (1924). It is also well established that evidence is sufficient to go to the jury where it discloses facts from which the jury may legitimately deduce either of two conclusions and where there is substantial evidence that the defendant committed the crime of which he is accused. State v. Merryman, 79 Ariz. 73, 283 P.2d 239 (1955); State v. King, 66 Ariz. 42, 182 P.2d 915 (1947)."

We hold the evidence was sufficient to go to the jury, and that failure to make a motion for a directed verdict was not prejudicial error.

■ Defendant next contends that it was fundamental error for the court to fail to instruct the jury concerning reasonable doubt. He cites People v. Dewberry, 51 Cal.2d 548, 334 P.2d 852. In the instant case the court's instructions were complete, including the instruction on reasonable doubt as well as those on the five forms of verdict submitted to the jury. In Dewberry, supra, the court twice refused to give a requested instruction when the court had instructed in such a manner that the jury might reasonably have been given the impression that the rule requiring a finding of the lesser offense applied only between degrees of murder and in that case defendant had offered evidence that manslaughter might be the correct finding. In the instant case the jury was instructed as to every possible lesser degree and valid possible excuse under the evidence and that the instructions as a whole were both fair and proper statements of the law, State v. Simmering, 89 Ariz. 261, 361 P.2d 4;

State v. Sorrell, 85 Ariz. 173, 333 P.2d 1081. This includes the court's instructions concerning stipulation by counsel for both sides as to the existence of a fact. We cannot agree that this was misleading or confusing to a jury or that it jeopardized the defendant's right to a fair trial.

■ Defendant's final contention is that the court failed to instruct the jury that the testimony of an accomplice must be corroborated as provided by A.R.S. § 13–136, which provides:

"A conviction shall not be had on the testimony of an accomplice unless the accomplice is corroborated by other evidence which, in itself and without aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

We set forth the test as to whether a witness was an accomplice in State v. Thomas, 79 Ariz. 355, 358, 290 P.2d 470, 472

"The test of whether or not one is an accomplice is whether he could be informed against for the same crime of which the defendant is accused."

Also see State v. Owens, 103 Ariz. 541, 447 P.2d 233 (1968); State v. Rivera, 103 Ariz. 458, 445 P.2d 434 (1968), cert. den. 395 U.S. 929, 89 S.Ct. 1790, 23 L.Ed. 2d 248; State v. Phillips, 102 Ariz. 377, 430 P.2d 139 (1967); State v. Ballesteros, 100 Ariz. 262, 413 P.2d 739 (1966); State v. Sims, 99 Ariz. 302, 409 P.2d 17 (1965), cert. den. 384 U.S. 980, 86 S.Ct. 1880, 16 L.Ed.2d 691.

An aider or abettor in the commission of a crime under A.R.S. § 13–139 is an accomplice punishable as a principal as distinguished from an accessory under A.R.S. § 13–141, being one who after full knowledge that a felony has been committed conceals such fact from the magistrate or harbors and protects the principal. In State v. Owens, supra, we held·

"Defendant takes as literal the language of this test, pointing out that [the witness] had been jointly informed against with Owens. We do not think that the statement of the rule is to be construed as meaning that the witness was in fact informed against as an accomplice, but whether the witness could properly be informed against for the same crime which defendant was accused. A person might be informed against for a crime which, for numerous reasons might be a charge improperly brought. Here, since in Arizona by A.R.S. § 13–139 accomplices are punishable as principals, the trial judge in directing a verdict of acquittal could only have found as a matter of law that [the witness was improperly informed against."

That a witness has been informed against for the same crime raises no presumption that he was an accomplice of the person being tried, and in State v. Gutierrez, 81 Ariz. 377, 306 P.2d 634, cert. den. 355 U.S. 17, 78 S.Ct. 79, 2 L.Ed.2d 23, we said:

"While it is true that the question of whether a witness is an accomplice is one of fact for the jury if the testimony leaves the matter in doubt, it is equally true that if the evidence is clear and undisputed it is the function of the court to decide it. Cruz v. State, 40 Ariz. 436, 14 P.2d 247. In the instant case it is clear that Varela had nothing whatever to do with dispensing Heroin to Soto. At the time Soto 'took the fix', both at night and the following morning, Varela was in another room asleep. She and defendant had previously divided the Heroin purchased jointly by them in Nogales, and defendant procured the Heroin injected into the body of Soto from a cache in which he had hidden his portion. There is no evidence from which even an inference can be drawn that Varela was an accomplice."

There was sufficient independent evidence to sustain a conviction in the instant case without the testimony of Parker and Wright. However, they were neither principals or accomplices to the murder. State v. Thomas, supra. They became involved as accessories after its commission by concealment, harboring and protecting the defendant.

Judgment affirmed.

LOCKWOOD, C. J., and STRUCKMEYER, V. C. J., and UDALL and HAYS, JJ., concur.